UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS GESUALDI and FRANK FINKEL as
Trustees of Local 282 International Brotherhood of
Teamsters Welfare, Pension, Annuity, Job Training
and Vacation Sick Leave Trust Funds,

                    Plaintiffs,              **REPORT AND**
                                                        **RECOMMENDATION**

      - against -                           11 CV 958 (ARR)

INTERSTATE MASONRY CORP. and JANINE
FRANTELLIZZI,

                    Defendants.
-----------------------------------------------------------------X

On February 28, 2011, plaintiffs Thomas Gesualdi and Frank Finkel, as Trustees of the Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation Sick Leave Trust Funds ("the Funds"), commenced this action against defendant Interstate Masonry Corp. ("Interstate") and Janine Frantellizzi ("Frantellizzi"), pursuant to Section 502 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132 and 1145 ("ERISA"), and Section 301 of the Labor Management Relations Act, 29 U. S.C. § 185, alleging that defendant Interstate failed to timely submit contributions and reports to the Funds as required by the terms of a collective bargaining agreement (the "CBA"), which was in effect from July 1, 2008 to June 30, 2011. (Compl.[1] ¶¶ 1, 2, 3, 6, 7, 11; Puccio Decl.[2] ¶ 6, Ex. B at 30).

Despite proper service, defendants have not answered or otherwise moved in response to the Complaint. On August 29, 2011, the Clerk of the Court entered a notation of default against defendants, and plaintiffs filed a motion for a default judgment.

---

[1] Citations to "Compl." refer to the Complaint, filed on February 28, 2011.

[2] Citations to "Puccio Decl." refer to the Declaration of Joseph Puccio, dated August 25, 2011. Exhibit B refers to the Collective Bargaining Agreement, a copy of which was filed as an exhibit to the Puccio Declaration.

Presently pending before this Court on a referral from the district court is plaintiffs' motion for a default judgment.

For the reasons set forth below, the Court respectfully recommends that plaintiffs' motion for a default judgment be granted, and damages be awarded in the amount of $73,755.02.

## BACKGROUND

Plaintiffs are Trustees of various multi-employer benefit trusts within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A). (Compl. ¶¶ 2, 3). Defendant Interstate, which maintains its principal place of business in Maspeth, New York, is a signatory to the CBA, and an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). (Id. ¶ 9; Puccio Decl. ¶ 6). Defendant Frantellizzi, allegedly a principal of Interstate, has an office in Queens, N.Y. and allegedly submitted checks in payment of contributions that appear to be signed in her personal capacity with no demonstration that she was signing in a representative capacity. (Compl. ¶¶ 7, 29, 30).

Pursuant to the CBA, which incorporates the Declaration of Trust[3] ("Trust Agreement"),[4] Interstate is required to submit certain reports and payments to the Funds at various rates for each hour worked by covered employees. (Puccio Decl. ¶¶ 8, 9, 10; Ex. A at 27; CBA §§ 4, 11). The Trust Agreement requires that the employer submit written reports to the Funds; these reports must contain the statements of the employees who performed work under the CBA and the number of hours worked. (Puccio Decl. ¶ 20; Ex. A; Art. IX § 1(c)).

On February 28, 2011, this action was commenced on behalf of the Trustees, seeking to recover unpaid contributions, interest, liquidated damages, attorneys' fees, and the costs of the

---

[3]Citations to "Trust Agreement" refer to the Declaration of Trust, a partial copy of which was filed on August 25, 2011 as Exhibit A to the Puccio Declaration.

[4]The CBA provides that "the Employer and the Union hereby agree that upon the execution of this Agreement they shall be deemed parties to said Trust Agreements." (CBA § 18(g)).

2

action. The Summons and Complaint were served on Interstate by service on the Secretary of State on March 3, 2011. (Jaramillo Decl.[5] 5, Ex. B). The individual defendant Frantellizzi was personally served on March 25, 2011 through service on an individual at Interstate, with a copy mailed to the business address. (Jaramillo Decl. ¶ 6, Ex. C). Defendants have failed to file an Answer, respond to plaintiffs' Complaint, or otherwise appear and defend this action.

The Complaint alleges that defendants have failed to pay contributions for the months of December 2009, February 2010, March 2010, June 2010, and August 2010 through November 2010, in violation of ERISA, 29 U.S.C. § 1145. (Compl. ¶ 14). In addition to delinquent contributions, plaintiffs seek interest, liquidated damages and attorneys' fees and costs, as well as injunctive relief. (Id. ¶¶ 25-27, 36).

On August 29, 2011, plaintiffs filed a motion for default judgment, and on that same day, the Clerk of the Court entered a notation of default against both defendants. The case was thereafter referred to this Court to conduct an inquest and prepare a Report and Recommendation on damages, injunctive relief, and attorneys' fees. Having received no opposition papers from defendants, the Court has reviewed only the plaintiffs' submissions.

## DISCUSSION

I. Default Judgment

A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).

---

[5]Citations to "Jaramillo Decl." refer to the Supplemental Declaration in Support of Motion for Default Judgment filed by Noelia E. Jaramillo, Esq. and dated October 24, 2011.

3

First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(b).

In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including 1) whether the grounds for default are clearly established; 2) whether the claims were pled in the Complaint thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and 3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2

4

(S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

B. Entry of Default Judgment

1. Liability for Damages Alleged in Complaint

In this case, plaintiffs allege in the Complaint that defendant Interstate violated the terms of the CBA and ERISA by failing to timely submit required reports and contributions to the Funds. (Compl. ¶¶ 10-16; Jaramillo Decl. ¶¶ 15-18). Pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, defendant is required to make contributions to the Funds in accordance with the terms of the CBA. (Compl. ¶ 9). Accordingly, plaintiffs seek to recover the delinquent contributions, interest, and liquidated damages owed for the period alleged in the Complaint and Ms. Jaramillo's Declaration,[6] as well as attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g)(2). (Jaramillo Decl. ¶¶ 17, 18).

Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the CBA (see Puccio Decl, Ex. B), the Court finds that plaintiffs have sufficiently established liability as to warrant entry of a default judgment. See 29 U.S.C. § 1132(g)(2).

Not only have plaintiffs stated a valid claim, but it is beyond dispute that defendants are in default. Defendants have not responded to the Complaint, nor have defendants even appeared in this action by counsel. The failure by Interstate to obtain counsel in this case constitutes a failure to defend because defendant, being a corporation, cannot proceed in federal court pro se.

---

[6]Although the Complaint only alleges delinquencies through November 2010, the Complaint specifically seeks damages for any additional amounts that become due "[d]uring the course of the instant action." (Compl. ¶ 22).

5

See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Moreover, despite proper service, defendants have not only failed to file an Answer or otherwise move with respect to the Complaint, but defendants have also failed to respond either to plaintiff's Motion for a Default Judgment or the Order from this Court relating to the calculation of damages, see Hirsch v. Innovation Int'l, Inc., No. 91 Civ. 4130 (MJL), 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"), and thus, plaintiffs' evidence on damages is undisputed.

Finally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved. See id. at *2 (declining to enter default judgment, as plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Given the numerous opportunities afforded defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that plaintiffs' motion for entry of a default judgment be granted.

II.  Damages

A. Legal Standard

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1

(S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [t]he court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan. See 29 U.S.C. § 1132(g)(2). These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> (I) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Id.; see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

B. Monetary Damages

In this case, where plaintiffs have filed reasonably detailed materials pertaining to the damages incurred, and defendants have failed to make an appearance or otherwise respond and

7

present evidence on the issue of damages, the Court is able to make an informed recommendation regarding damages.

1. Delinquent Contributions

a) Unpaid Contributions - December 2009

According to the Funds' records, Interstate submitted remittance reports but failed to pay contributions for the month of December 2009. (Jaramillo Decl. ¶ 15; Puccio Decl. Ex. C). The amount reported as due for the month of December was $3,217.84. (Jaramillo Dec. ¶ 15; Puccio Decl. ¶¶ 13, 14). Interstate submitted four checks totalling $3,217.84 representing payment for contributions owed for December 2009, but all four checks were returned by the bank for insufficient funds. (Puccio Decl. ¶ 14, Ex. D).

Prior to this time, in February 2006, the Trustees notified all signatory employers that effective March 1, 2006, the Funds were authorized to collect a $75 administrative fee for every dishonored check. (Id. ¶ 15). Pursuant to this requirement, Interstate submitted a fifth check in the amount of $300, which represented payment for the administrative fees assessed for the four dishonored checks. (Jaramillo Decl. ¶ 19). This check was also dishonored by the bank. (Id., Puccio Decl. Ex. D). Thus, in addition to the $3,217.84 owed in contributions for the month of December 2009, plaintiffs also seek an additional $375 to cover the administrative fees incurred as a result of the five dishonored checks. Such fees have been approved by this Court in the past. See, e.g., Gesualdi v. Cambria Rubbish & Container Servs., Inc., No. 09 CV 5453, 2010 WL 5490836 (E.D.N.Y. Dec. 30, 2010).

Having reviewed the plaintiffs' submissions, the Court respectfully recommends that the plaintiffs be awarded damages for the delinquent contributions owed for December 2009 in the total amount of $3,592.84.

b) Personal Liability

8

With respect to defendant Frantellizzi, plaintiffs seek to impose personal liability upon her for the dishonored checks because the checks bore her name without disclosing any representative capacity. See N.Y.U.C.C. § 3-403(2)(b) (providing that an authorized representative whose name appears on an instrument may be liable for the checks "if the instrument names the person represented but does not show that the representative signed in a representative capacity"); Fin. Assoc. v. Impact Mktg, Inc., 90 Misc. 2d 545, 546-47, 394 N.Y.S.2d 814, 815 (N.Y. Civ. Ct. 1977) (holding that liability may be imposed on the drawer or maker "if he fails to show that he signed in a representative capacity"). If found personally liable, the drawer or maker is responsible for the amounts of the dishonored checks and any administrative fees assessed. See Gesualdi v. Cambria Rubbish & Container Servs., Inc., No. 09-CV-5453, 2010 WL 5490938, at *3 (E.D.N.Y. Nov. 19, 2010) (adopted by Gesualdi v. Cambria Rubbish & Container Servs., Inc., 2010 WL 5490836, at *2). The burden of disproving personal liability lies with defendants. Save All Tobacco, Inc. Ltd. v. Golden Distribs., Ltd., 134 B.R. 770, 774 (Bank. S.D.N.Y. 1991).

Here, where Ms. Frantellizzi has failed to appear and has not introduced any evidence to suggest that there was an understanding that she would not be personally liable for the checks, the Court finds that she is jointly liable with the corporate defendant for the amounts owed on the checks and the administrative fees assessed by the Funds. Id. at 774-5; Gesualdi v. Cambria Rubbish & Container Servs., Inc., 2010 WL 5490938, at *3.

Accordingly, based on a review of the checks and other submitted documentation, the Court respectfully recommends that Ms. Frantellizzi be held jointly and severally liable for $3,592.84, which represents the amount of the dishonored checks that she signed and the administrative fees incurred.

c) Additional Unpaid Contributions

9

According to the Funds' records, Interstate failed to remit contributions and failed to submit remittance reports for the months of October 2010 through June 2011. (Jaramillo Decl. ¶ 16; Puccio Decl. ¶¶ 13, 17; Cody Decl.[7] ¶ 13). In accordance with Article IX, Section 1(e) of the Trust Agreement, which permits the Funds to estimate contributions when no remittance reports are submitted, the Funds estimated the following amounts owed:[8]

| MONTH | TOTAL BASE REPORT HOURS | ESTIMATED HOURS | ESTIMATED CONTRIBUTIONS |
|---|---|---|---|
| October 2010 | 152 | 167.2 | $5,012.66 |
| November 2010 | 152 | 167.2 | $5,012.66 |
| December 2010 | 152 | 167.2 | $5,012.66 |
| January 2011 | 152 | 167.2 | $5,012.66 |
| February 2011 | 152 | 167.2 | $5,012.66 |
| March 2011 | 152 | 167.2 | $5,012.66 |
| April 2011 | 152 | 167.2 | $5,012.66 |
| May 2011 | 152 | 167.2 | $5,012.66 |
| June 2011 | 152 | 167.2 | $5,012.66 |
| TOTAL | | | $45,113.94 |

Having reviewed the documentation submitted by plaintiffs and the calculations performed in accordance with the estimating provisions of the Trust Agreement, the Court finds that plaintiffs are owed delinquent contributions in the amount of $45,113.94 for the period October 2010 through June 2011. Accordingly, the Court respectfully recommends that the

---

[7] Citations to "Cody Decl." refer to the Declaration of Theresa Cody, dated October 24, 2011.

[8] According to the Trust Agreement, an employer who fails to submit remittance reports must pay an increased monthly contribution. The amount owed is calculated by "adding 10% to the number of hours for the month in which the largest monthly number of hours were reported in the preceding 12 remittance reports submitted" – which in this case is March 2010 (the "base report") – "and then multiplying those hours by the applicable Fund contribution rate." (Jaramillo Decl. ¶ 14; Puccio Decl. Ex. A at 28-29).

10

plaintiffs be awarded a total of $49,006.78 in unpaid contributions.

2. Interest

Pursuant to the CBA, contributions are due 45 days after the close of the calendar month for which covered work is performed. (Jaramillo Decl. ¶ 11; Puccio Decl. Ex. B at 12). Specifically, the Trust Agreement provides that employer contributions and reports are due "on the due date established in the Employer's collective bargaining agreement with the Union, but in no case shall the contributions due date be later than 45 days after the last day of the calendar month for which contributions are due." (Trust Art. IX § 1(b)). Under Section 1132(g)(2) of ERISA, the interest rate is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). In this case, an amendment to the CBA established that for all contribution obligations that accrue after November 1, 2003, interest is to be calculated at the rate of 1.5% per month (Jaramillo Decl. ¶ 24; Puccio Decl. Ex. A), or .05% per day.

a) Interest on Unpaid Contributions

Since interest is to be calculated from the first day of the month when payment becomes due until the date payment was made, plaintiffs calculated interest for each month owed by multiplying the amount of contributions owed each Fund by the appropriate interest rate for the period owed until October 24, 2011. Those amounts are set forth below. In addition, plaintiffs are owed additional interest on these delinquent contributions for the period from October 24, 2011 to the date of this Report. Those amounts are also set forth below.

| FUND | DELINQUENT CONTRIBUTIONS | INTEREST AS OF 10/24/11 | ADDITIONAL INTEREST TO DATE |
|---|---|---|---|
| Welfare | $17,782.24 | $2,045.08 | $204.50 |
| Pension | $13,707.04 | $1,566.22 | $157.63 |

11

| Annuity | $11,829.62 | $1,382.84 | $136.04 |
| Job Training | $150.48 | $15.27 | $1.73 |
| Vacation/Sick Leave | $4,862.40 | $566.01 | $55.92 |
| TOTAL | | | $555.82 |

b) Interest on Late Paid Contributions

The Funds' records reflect that Interstate was late in paying contributions for the months of March 2010, August 2010 and September 2010. (Jaramillo Decl. ¶ 20; Puccio Decl. ¶ 16, Ex. F). Based on the date these contributions were due, the Funds calculated the interest owed through October 24, 2011; this Court has calculated the additional interest owed from October 24, 2011 to the date of this Order. These amounts are:

| FUND | LATE PAID CONTRIBUTIONS 3/10, 8/10, 9/10 | INTEREST AS OF 10/24/11 | ADDITIONAL INTEREST TO DATE |
|---|---|---|---|
| Welfare | $2,990.15 | $81.76 | $34.39 |
| Pension | $2,200.68 | $60.43 | $25.31 |
| Annuity | $2,081.56 | $54.74 | $23.94 |
| Job Training | $152.00 | $28.05 | $1.75 |
| Vacation/Sick Leave | $841.50 | $22.31 | $9.68 |
| TOTAL | | | $95.07 |

(Puccio Decl. Ex. E).

Accordingly, having reviewed plaintiffs' calculations, the Court respectfully recommends that plaintiffs be awarded $6,473.60 in interest accrued on the delinquent and late-paid contributions to the date of this Report.

3. Liquidated Damages

12

Plaintiffs also request an award of liquidated damages for late contributions. Pursuant to ERISA and the Trust Agreement, plaintiffs are entitled to liquidated damages for unpaid contributions. See 29 U.S.C. § 1132(g)(2)(c) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions). The Trust Agreement requires an employer to pay liquidated damages in an amount that is the greater of: (1) the amount of interest owed on the unpaid contributions, or (2) 20 percent (20%) of the unpaid contributions. (Jaramillo Decl. ¶ 33; Puccio Decl. Ex. A).

Based upon defendant's failure to timely remit $48,331.78 in required contributions to the Funds for the relevant periods, the Court determines that defendant owes a total of $9,666.36, which represents 20% of the unpaid contributions.[9]

Accordingly, pursuant to the CBA and Section 1132(g)(2)(c) of ERISA, the Court respectfully recommends that the Funds receive an award for liquidated damages in the total amount of $9,666.36 for the unpaid contributions.

In addition, plaintiffs are entitled to an award of liquidated damages based on the late-paid contributions. (Jaramillo Decl. ¶ 35). Taking 20% of the $8,265.89 owed in late-paid contributions results in a liquidated damages award of $1,653.18, which is greater than the $219.98 owed in interest. Consequently, the Court recommends that plaintiffs be awarded liquidated damages in the amount of $1,653.18 for the late-paid contributions.

In total, the Court recommends an award of liquidated damages of $11,319.54.

3. Attorneys' Fees

a) Standards

Plaintiffs also request reasonable attorneys' fees and costs in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D), which provides that when an employee benefit fund

---

[9]Using 20% of the contributions owed produces an amount greater than the interest owed ($6,443.76) and therefore, plaintiffs are entitled to receive the greater amount in accordance with the Trust Agreement.

13

prevails in a legal action, the defendant is liable for legal costs.

When assessing whether legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Id. at 187 n.3 (citation omitted). A number of courts within the Second Circuit have applied these factors when awarding attorney's fees. See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at* 7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see

also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing Gierlinger v. Gleason,160 F.3d 858, 876 (2d Cir. 1998)); Bourgal v. Atlas Transit Mix, No. 93 CV 0569, 1996 WL 75290, at *7 (E.D.N.Y. Feb. 7, 1996).

### b) Billing Rates

In this case, plaintiffs were originally represented by the Law Offices of Avram Schreiber ("the Schreiber Firm"), which are located at 40 Exchange Place, New York, New York. In that regard, the Funds submitted a computer printout showing the legal fees paid to the Schreiber Firm for work performed from October 21, 2010 through June 30, 2011. (See Puccio Decl. Ex. G). As of July 1, 2011, the Funds retained the firm of Cohen, Weiss and Simon LLP ("CWS") to represent them in this action. (Jaramillo Decl. ¶ 39). In accordance with N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), CWS submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.

Plaintiffs seek a total of $9,240.00 for work performed by CWS in connection with this matter. According to Ms. Jaramillo's Declaration, four attorneys worked on this matter: 1) Ms. Jaramillo who is a 2008 law school graduate, billing at $225 per hour; 2) Peter DeChiara, a 1988

15

graduate of law school, billing at $275 per hour; 3) Michael Adler, a 2002 graduate of law school, billing at $250 per hour; and 4) Zachary Leeds, a 2004 graduate of law school, billing at $250 per hour. (Jaramillo Decl. ¶¶ 42, 43). In addition, plaintiffs seek reimbursement of $100 per hour for time spent by three paralegals who performed work in connection with this case. (Id.)

Plaintiffs also seek attorneys' fees in the amount of $1,818.89, representing services performed by Mr. Schreiber, his associates, and paralegals as of June 30, 2011 in connection with plaintiffs' efforts to obtain this judgment. (Id.) However, the computer printout plaintiffs submitted showing the legal fees paid to the Schreiber Firm for work performed from October 21, 2010 through June 30, 2011 is insufficient to support their claim for fees. The printout only provides the amount of the charge billed on each service date. It does not detail which Schreiber Firm attorneys performed which services, how many hours were billed for each task, what the Schreiber Firm's hourly billing rates were, or the experience of the attorneys performing work on the matter. (See Puccio Decl. Ex. G). Consequently, this Court is unable to determine the reasonableness of the hours spent or the rates charged and cannot recommend an award of fees paid to the Schreiber Firm at this time.

As for the fees charged by CWS, based on the Court's knowledge of the rates generally charged for this type of work in connection with an ERISA default, the Court finds that the rates of $275.00 per hour for the .10 hour spent on legal work performed by Mr. DeChiara and the $250 and $225 per hour for the legal work performed by Mr. Adler, Mr. Leeds, and Ms. Jaramillo[10] are within the range of billing rates of similarly experienced attorneys in this district working on comparable matters. See, e.g., Finkel v. Triple A Group, Inc., No. 07-CV-2653 (RRM), 2010 WL 1688359, at *9 (determining that hourly rates for associates ranging from $200.00 to $225.00 are reasonable in connection with an ERISA inquest); Finkel v. Jones Lang

---

[10]The Court notes that in total, Mr. Adler and Mr. Leeds spent .30 hours on the case; Ms. Jaramillo billed the highest number of hours – 17.9 hours – with the exception of the number of hours billed by the paralegals – 51.1 hours.

16

LaSalle Americas, Inc., No. 08 CV 2333, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding that hourly rates of $235.00 for senior associates and $225.00 for junior associates were reasonable); Finkel v. Rico Electric, Inc., No. 05 CV 2145, 2009 WL 3367057, at *11 (E.D.N.Y. Oct. 16, 2009) (awarding attorneys with five years of employee benefits experience at the rate of $225 per hour in a similar ERISA inquest).

Accordingly, the Court respectfully recommends that the requested rates for CSW be approved.

With regard to the rate charged for paralegal work, the Court respectfully recommends that the requested rate of $100.00 per hour be reduced to $80.00 per hour as reasonable and appropriate in light of the usual and customary rates charged in this district. See Finkel v. Triple A Group, Inc., 2010 WL 1688359, at *9 (finding a rate of $75.00 per hour for paralegal work to be reasonable in an ERISA default action); Finkel v. Jones Lang LaSalle Americas, Inc., 2009 WL 5172869, at *5 (finding an $80.00 per hour rate for paralegal work in an ERISA default action to be reasonable); LaBarbera v. United Ornamentals, Inc., No. 08 CV 2573, 2009 WL 187574, at *9 (E.D.N.Y. Jan. 26, 2009) (same).

Having determined the reasonable rates to charge in this case, the Court now turns to the reasonableness of the number of hours billed in this matter. As previously discussed, the number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary. See, e.g., LaBarbera v. Frank J. Batchelder Transp., 2009 WL 240521, at *4. If the number of hours billed are determined to be unreasonable, the court may exclude that portion of hours it finds to be excessive or unreasonable in its attorney's fees calculations. See id.

Based on the contemporaneous billing records submitted to the Court in connection with the instant motion, CWS seeks compensation for a total of 69.4 hours of work on this matter from July 1, 2011 through October 24, 2011. (Jaramillo Decl. ¶ 42). CWS' work on this case included drafting plaintiffs' Motion for Default Judgment and the materials annexed thereto, and

17

preparing supplemental declarations updating the damages sought. In addition, the Schreiber Firm billed an unknown number of hours in commencing this action and drafting the Complaint. Having carefully examined the billing records, the Court finds that the number of hours charged in this matter is unduly high given the amount of work performed and the fact that the case involves a relatively straightforward ERISA claim. Given the duplication of effort that occurred as a result of the decision to change counsel, the Court respectfully recommends a 20% reduction in fees charged by CWS.

Accordingly, based on the reduced hourly rates set forth above, and the reduced number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $6,574.40 in attorneys' fees.

### 4. Costs

Plaintiffs also seek an award of reasonable costs incurred in the amount of $5.70, excluding administrative fees. (Jaramillo Decl. ¶ 48, Ex. F; Puccio Decl. ¶¶ 18-19, Ex. G). Having reviewed the request, the Court respectfully recommends that plaintiffs be reimbursed for their costs of $5.70.

### C. Injunctive Relief

ERISA states that a civil action may be brought by a fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3). When defendant is in default and the applicable statute allows for injunctive relief, the Court must find that plaintiffs have shown that they meet the requirements for obtaining a permanent injunction, including a showing of irreparable harm. See La Barbera v. Federal Metal & Glass Corp., 666 F.Supp.2d 341, 349-50 (E.D.N.Y. 2009). Plaintiffs must also show an absence of another adequate remedy at law. Id.

Although in the Complaint, plaintiffs seek to permanently enjoin defendant from any

18

"further of future violations of this or subsequent Collective Bargaining Agreements with Local 282 I.B. of T" (Compl. ¶ 27), plaintiffs have not demonstrated the necessity of a permanent injunction. Indeed, in submitting their inquest papers, counsel appears to have abandoned the request for injunctive relief. Without allegations of more pressing need or a lack of legal alternatives, the Court cannot conclude that a permanent injunction is necessary to prevent irreparable harm and that there exists no adequate remedy at law.

Accordingly, the Court respectfully recommends that plaintiffs' request for the issuance of a permanent injunction be denied.

## CONCLUSION

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages from defendant Interstate: 1) $49,006.78 in delinquent contributions; 2) $6,473.60 in interest on the untimely paid contributions; 3) $375.00 in administrative fees for the returned checks; 4) $11,319.54 in liquidated damages; and 5) $6,580.10 in attorney's fees and costs. Therefore, the Court recommends that plaintiffs be awarded a total of $73,755.02. In addition, the Court recommends that Ms. Frantellizzi be held jointly and severally liable for $3,592.24, which represents the dishonored checks she signed in a personal capacity that were returned for insufficient funds and the administrative fees assessed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 16, 2011

/S/ CHERYL
Cheryl L. Pollak
United States Magistrate Judge